**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATIONWIDE INSURANCE COMPANY OF AMERICA, | |
| *Plaintiff,* | CIVIL ACTION NO. 25-650 |
| v. | |
| FRANCIS W. SCHIAVO, | |
| *Defendant.* | |

**Pappert, J.**                                                    **August 26, 2025**

## MEMORANDUM

Benjamin Lovelace and his parents sued Francis Schiavo and some of his fraternity brothers, along with their fraternity's local and national chapters and the College of Charleston, in South Carolina state court over the hazing Lovelace received while he attempted to pledge the fraternity. Schiavo is insured under a Nationwide Insurance Company of America homeowners policy issued to his parents and Nationwide is defending Schiavo in the state court action subject to a reservation of rights.

Nationwide seeks a declaration that it has no duty to defend or indemnify Schiavo and has now moved for summary judgment. The Court grants the motion because Schiavo's alleged conduct does not constitute an "occurrence" which would trigger coverage under the Policy and, in any event, various policy exclusions preclude coverage.

1

I

Lovelace enrolled at the College of Charleston as a freshman in the fall of 2022. (State Ct. Compl. ¶ 24, Ex. B to Compl., Dkt. No. 1.)  The following semester, he accepted a bid from one of the fraternities on campus, Sigma Chi, becoming its "pledge." (*Id.* ¶ 28.)  A pledge is someone who has accepted a bid from a fraternity but has not yet been initiated as a brother.  (*Id.*)  Sigma Chi had several brothers during this time, including Francis Schiavo.  (*Id.* ¶ 2.)

Lovelace claims generally that various fraternity brothers, among other things, forced him to drink alcohol and smoke marijuana, kicked him and threw beer cans, sriracha and mayonnaise at him, and forced him to buy alcohol and snacks for them. (*Id.* ¶¶ 29, 31–32, 36, 37, 39.)

Lovelace also alleges Schiavo in particular forced him to wear a "coke spoon necklace," which humiliated him.  (*Id.* ¶ 38.)  He also claims that Schiavo threatened him because he threw the necklace away.  (*Id.* ¶ 47.)  And he alleges that Schiavo threw "beer bottles" at him "and glass shattered all over the floor" near his feet.  (*Id* ¶ 39.)  As Lovelace began to clean the broken glass on the floor, Schiavo apparently "threw additional glass bottles, breaking them all around" him.  (*Id.*)  And sometime later, Schiavo threw beer bottles at Lovelace again.  (*Id.* ¶ 40.)

Based in part on these events, the Lovelaces filed suit against Schiavo, other Sigma Chi brothers, the local and national Sigma Chi chapters and the College of Charleston in South Carolina state court, alleging negligence, gross negligence, negligent infliction of emotional distress, and outrage.  (*Id.* ¶¶ 57–85.)  Lovelace contends Schiavo and the other defendants "subjected" him to "hazing activities" and

2

engaged in "traditions and practices which were dangerous and put the physical and mental well-being of" himself "at risk." (*Id.* ¶ 60.) And he claims that as a "direct . . . result of the negligence, gross negligence, recklessness, willfulness and wantonness of" Schiavo (and the other defendants), he "suffered numerous painful and severe injuries to his body, as well as mental, emotional, and financial injuries." (*Id.* ¶ 87.)

Nationwide is defending Schiavo, pursuant to a reservation of rights, under a homeowners policy ("the Policy") issued to his parents. (Letter, Oct. 11, 2024, at 117, Ex. C to Compl., Dkt. No. 1.) In reserving its rights, Nationwide stated it may not have a duty to defend Schiavo because the Lovelaces sued him for damages caused not by not an accident, but by intentional conduct, which would not constitute an "occurrence." (*Id.* at 125–26.) Nationwide also took the position that the allegations against Schiavo might fall under certain coverage exclusions. (*Id.* at 126.)

## II

Federal Civil Rule 56 directs a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant does so, the burden shifts to the nonmovant to show evidence raising a genuine issue of material fact for trial. *Id.* Although the Court gives the nonmoving party the benefit of all factual inferences, he still must identify "evidence on which the jury could reasonably find for" him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the evidence he identifies is "merely colorable" or "not

significantly probative," then summary judgment is appropriate.  *Id.* at 249–50 (citation omitted).

A

Under Pennsylvania law, "the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (citation omitted).  The first step in determining if Nationwide has a duty to defend is to review the Policy and ascertain its "scope of coverage."  *Sikirica v. Nationwide Ins.*, 416 F.3d 214, 226 (3d Cir. 2005); *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins.*, 908 A.2d 888, 896–97 (Pa. 2006).  An insurance policy is a contract, the meaning of which presents a question of law.  *Am. & Foreign Ins. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 540 (Pa. 2010); *Miller v. Poole*, 45 A.3d 1143, 1145 (Pa. Super. Ct. 2012) (citation omitted).  In Pennsylvania, the state courts construe the terms of a contract in accordance with their "ordinary meaning."  *St. Paul Fire & Marine Ins. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991) (citation omitted).

The second step is to examine the complaint filed by the Lovelaces and determine whether the allegations against Schiavo "constitute the type of instances that will trigger coverage" under the Policy.  *Kvaerner*, 908 A.2d at 897.  At this step, the Court focuses not on the specific "causes of action formally pled," but the "factual allegations" underlying them.  *Liberty Mut. Pers. Ins. v. Mercado*, No. 24-1089, 2025 WL 62800, at *2 (E.D. Pa. Jan. 9, 2025) (citing *Mut. Benefit Ins. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)).  If "the factual allegations of the complaint against the insured state a claim which would potentially fall within the coverage of the policy, then the insurer

4

has the duty to defend." *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. Ct. 1997) (citation omitted). In determining whether the Lovelaces' allegations trigger coverage under the Policy, the Court "may not stray outside the four corners" of their complaint. *Lenick Constr., Inc. v. Selective Way Ins.*, 737 F. App'x 92, 94 (3d Cir. 2018) (citation omitted); *see also Erie Ins. Exch. v. Moore*, 228 A.3d 258, 268 (Pa. 2020). Instead, Nationwide's duty to defend is "determined *solely* from the language of the complaint against" Schiavo. *Kvaerner*, 908 A.2d at 896 (emphasis added) (citation omitted). And an insurer's duty to defend is broader than its duty to indemnify, so if Nationwide has no duty to defend Schiavo, it has no duty to indemnify him. *Id.* at 896 n.7.

B

The Policy provides that Nationwide will defend if "a suit is brought against an 'insured' for damages due to an 'occurrence' resulting from negligent personal acts." (Nationwide Ins. Pol'y at 59, Ex. A to Compl., Dkt. No. 1.) The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period," in "[b]odily injury." (*Id.* at 37.) And "bodily injury" means "bodily harm." (*Id.* at 35.) Taken together, these limitations mean that Nationwide agreed to defend a lawsuit against Schiavo for damages due to an accident resulting in bodily harm. "Accident" is not defined in the Policy, but Pennsylvania courts have defined the term in the context of insurance policies as "[a]n unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally"; and the "key term in the ordinary definition of 'accident' is 'unexpected,'" which "implies a degree of fortuity." *Kvaerner*, 908 A.2d at

5

898 (alteration in original) (quoting *Webster's II New College Dictionary* 6 (2001)). In determining whether the Lovelaces sued Schiavo for damages caused by an accident, the Court must view the events in question "from the perspective of the insured"—here, Schiavo. *State Farm Mut. Auto. Ins. v. Martin*, 660 A.2d 66, 67 (Pa. Super. Ct. 1995) (footnote omitted).

Schiavo did not haze, threaten and throw beer bottles at Lovelace by accident. Lovelace alleged that Schiavo subjected him to "hazing activities" and engaged in "traditions and practices which were dangerous" to him. (State Ct. Compl. ¶ 60.) In support of these allegations, he accused Schiavo of repeatedly throwing beer bottles at him, which shattered near his feet. (*Id.* ¶¶ 39–40.) He also claimed that as a "direct . . . result of the negligence, gross negligence, recklessness, willfulness and wantonness of" Schiavo, he "suffered numerous painful and severe injuries to his body." (*Id.* ¶ 87.) By participating in hazing "traditions" and "practices"—here, by throwing beer bottles at Lovelace causing him bodily harm—Schiavo acted with "design, coordination or plan." *Brenneman v. St. Paul Fire & Marine Ins.*, 192 A.2d 745, 747 (Pa. 1963). The Lovelaces' alleged injuries were not "caused by an event so unexpected, undesigned, and fortuitous as to qualify as" an accident "within the terms of the policy." *Donegal Mut. Ins. v. Baumhammers*, 938 A.2d 286, 293 (Pa. 2007).

Under Pennsylvania law, moreover, no accident occurs when the conduct of the insured is alleged to be "intentional." *Id.* at 291; *see also Gene's Rest., Inc. v. Nationwide Ins.*, 548 A.2d 246, 247 & n.1 (Pa. 1988); *Am. Nat'l Prop. & Cas. Cos. v. Hearn*, 93 A.3d 880, 886 (Pa. Super. Ct. 2014). While many of the Lovelaces' claims sound in negligence, their gravamen is that Schiavo engaged in intentional conduct,

6

such as throwing beer bottles at Lovelace.  (State Ct. Compl. ¶¶ 39–40.)  Given that Lovelace alleged that Schiavo repeatedly threw beer bottles at him as a form of hazing causing bodily harm, the complaint alleged "purposeful" conduct on the part of Schiavo, meaning no accident occurred.  *Kiely ex rel. Feinstein v. Phila. Contributionship Ins.*, 206 A.3d 1140, 1147 (Pa. Super. Ct. 2019).

Schiavo contends his conduct was "accidental" because he may have been "engaged in the excessive consumption of drugs and alcohol" at the time of the alleged events.  (Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. at 15, Dkt. No. 26-1.)  To support this argument, he invokes *IDS Property Casualty Insurance Co. v. Schonewolf*, 111 F. Supp. 3d 618 (E.D. Pa. 2015).  There, the court held that an insurance company had a duty to defend an insured in a state court suit over an alleged drunken beating. *Id.* at 626.  The underlying complaint alleged that the insured had consumed alcohol "knowing that it would cause significant impairment and lapse of judgment and control" and that the insured's intoxication "led" him to commit a violent "attack" against a person.  *Id.* at 621.  The question before the court was whether, given these allegations, the insured had possibly committed an accidental beating, triggering his insurance company's duty to defend.  *Id.* at 623.

In holding the insured's conduct to be possibly accidental, the court stated "there are circumstances under Pennsylvania law where the intoxication of an insured can negate intent to a point where the insured's actions qualify as an 'accident,' as the term is understood in Pennsylvania . . . insurance contracts."  *Id.* at 626.  The court stressed that, in determining whether the insured was so drunk that he committed an accident, it was "bound to the averments in the underlying complaint."  *Id.*  Because the

complaint alleged the insured had consumed enough alcohol to cause a "significant impairment and lapse of judgment and control," it left "open the possibility that the impairment and lapse in judgment and control" on the part of the insured "was so severe as to negate [his] intent." *Id.*

Schiavo suggests he may have been drunk or high on drugs when he hazed Lovelace, making it "unclear . . . whether [he] had the requisite state of mind to commit the alleged actions intentionally." (Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. at 15–16.) Unlike the complaint in *IDS Property Casualty Insurance Co.*, the Lovelaces' allegations do not "leave open the possibility" that Schiavo was intoxicated enough at the time of the alleged events to "negate [his] intent." 111 F. Supp. 3d at 626. To the contrary, there are no allegations that Schiavo was drunk or high when he hazed Lovelace, nor does the complaint suggest that Schiavo "lacked awareness of his actions" because he was intoxicated. *State Farm Fire & Cas. Co. v. Est. of Mehlman*, 589 F.3d 105, 114 (3d Cir. 2009). And in determining whether an insurance company has a duty to defend, the Court must look "*solely*" at "the language of the complaint against the insured." *Kvaerner*, 908 A.2d at 896 (emphasis added).

## B

Even if Schiavo engaged in conduct constituting an occurrence under the Policy, a number of policy exclusions preclude coverage. Specifically, Schiavo's conduct falls within (1) the "expected" or "intended" injury exclusion, (2) the "criminal acts" exclusion, and (3) the "physical abuse, or harassment" exclusion.

1

The Policy does not cover claims for "[b]odily injury . . . which is expected or intended by an 'insured,' even if the resulting 'bodily injury'" is "of a different kind, quality or degree than initially expected or intended." (Nationwide Ins. Pol'y at 61). An "insured intends an injury" if "he acted knowing that [the] consequences [of his conduct] were substantially certain to result." *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 989 (Pa. Super. Ct. 1986). Pennsylvania courts have found that in "certain intentional tort[]" cases, "such as assault and battery," the insured knew that his conduct was substantially certain to result in bodily harm. *Allstate Ins. v. McClymonds*, No. 6-cv-805, 2007 WL 2254563, at *10 (W.D. Pa. Aug. 6, 2007) (citation omitted). Here, Lovelace alleged that Schiavo repeatedly threw beer bottles at him shattering them at his feet causing bodily harm. (State Ct. Compl. ¶¶ 39–40, 87.) By doing so, Schiavo "acted knowing the consequences" of his conduct—causing bodily harm to Lovelace— "would be substantially certain to result from" his "act[s]." *Donegal Mut. Ins. v. Ferrara*, 552 A.2d 699, 702 (Pa. Super. Ct. 1989); *see also Erie Ins. Exch. v. Fidler*, 808 A.2d 587, 590 (Pa. Super. Ct. 2002) (holding that an insured expected or intended to cause bodily harm when he threw someone against a wall although the underlying complaint did not "expressly state" that he "expected or intended" to cause the resulting injury).

2

The Policy also does not cover claims for bodily injury "caused by or resulting from an act or omission that is criminal in nature and committed by an 'insured.'" (Nationwide Ins. Pol'y at 61.) This "criminal acts" exclusion "applies regardless of

whether the insured is actually charged with or convicted of a crime." (*Id.*)  To be "criminal in nature," the act must "relat[e] to, involv[e], or be[] a crime." *Nationwide Prop. & Cas. Ins. v. Schlick*, No. 1909 WDA 2013, 2014 WL 10750738, at *3 (Pa. Super. Ct. Dec. 18, 2014) (quoting *Webster's Ninth New Collegiate Dictionary* 307 (1987)).

Schiavo concedes that we may look to South Carolina criminal law to determine whether he committed an act criminal in nature.  (Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. at 23.)  Under South Carolina law, it is unlawful for "a person to . . . recklessly engage in acts which have a foreseeable potential for causing physical harm to a person for the purpose of initiation or admission into or affiliation with a" fraternity.  S.C. Code Ann. § 16-3-510.  Here, Schiavo, among other things, hazed Lovelace by throwing beer bottles at him.  (State Ct. Compl. ¶ 39.)  This allegation describes reckless conduct by Schiavo, which had a foreseeable potential for causing physical harm to Lovelace for the purpose of his admission into Sigma Chi.  S.C. Code Ann. § 16-3-510.  Schiavo committed an act that "relates to, involves, or is a crime," and therefore, Nationwide has no duty to defend him under the Policy's "criminal acts" exclusion.[1]

3

The Policy also precludes coverage for claims alleging bodily injury "arising out of sexual molestation, corporal punishment, physical or mental abuse, or harassment,

---

[1]    Schiavo argues that because the "Lovelace Complaint does not allege that *any* physical harm befell Lovelace as a result of Schiavo's actions," the "South Carolina hazing statute is . . . inapposite." (Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. at 23.)  The state court complaint alleges that as a "direct . . . result of the negligence, gross negligence, recklessness, willfulness and wantonness of" Schiavo—the throwing of beer bottles—Lovelace "suffered" "painful and severe injuries to his body." (State Ct. Compl. ¶ 87.)

including sexual harassment, whether actual, alleged, or threatened." (Nationwide Ins. Pol'y at 62.) An insured physically abuses or harasses someone when he subjects him to "physical mistreatment." *Rosenberg v. Hudson Ins.*, 638 F. Supp. 3d 510, 523 (E.D. Pa. 2022). Here, again, Schiavo subjected Lovelace to "hazing activities" and engaged in "traditions and practices which were dangerous" to him. (State Ct. Compl. ¶ 60.) Specifically, he threw beer bottles at Lovelace as one means of hazing him. (*Id.* ¶¶ 39–40.) These allegations show that Lovelace's claim against Schiavo arises out of physical mistreatment by Schiavo. Thus, Nationwide has no duty to defend him under the "physical abuse, or harassment" exclusion.

Schiavo argues this exclusion "[g]enerally" applies to "conduct that involves sexual abuse, molestation, or similar behaviors." (Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. at 28.) But the exclusion applies to suits for bodily injury "arising out of . . . physical . . . abuse, or harassment," language which encompasses the hazing allegations made against Schiavo. (Nationwide Ins. Pol'y at 62.)

In sum, Nationwide has no duty to defend Schiavo, meaning it also has no duty to indemnify him. *Kvaerner*, 908 A.2d at 896 n.7.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.